**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

ERIC MOORE,

            Plaintiff,

    v.

Civil Action No.: 1:22-cv-10414-RWZ

INDUSTRIAL DEMOLITION, LLC
               Defendant.

---

## PLAINTIFF ERIC MOORE'S TRIAL BRIEF

Pursuant to Local Rule 16.5(f) of the U.S. District Court for the District of Massachusetts, the Plaintiff hereby submits the instant Trial Brief in advance of the trial to begin on April 11, 2023.

## BACKGROUND

Prior to his employment with Industrial Demolition, the Plaintiff and his family served as missionaries in Ecuador. His career and life were upended when his wife, Holly, developed severe and persistent altitude sickness that forced the Moore's and their four children to return to the United States.

Thereafter, the Plaintiff learned of the opportunity to work for Industrial Demolition after meeting Roger Oberkramer's step-daughter. In September of 2018, the Plaintiff met with Oberkramer, who introduced the Plaintiff to the Lawrenceburg, Indiana project and to the work that would be required of him should he be offered a job as a driver/laborer. The Plaintiff was then offered a full-time position with Industrial Demolition.

The Plaintiff worked at the Lawrenceburg Site until that job was completed in June or July of 2019. In March of 2019, prior to the completion of the Lawrenceburg Project, the Plaintiff was

offered a position at the Brayton Point Project in Somerset, Massachusetts. The Plaintiff declined the offer because he did not want to work for Roger Oberkramer due to his foul language, racist slurs, and abuse of subordinates.

When the Lawrenceburg Project ended, the Plaintiff had not secured another job. Oberkramer approached the Plaintiff again with an offer to work at the Brayton Point Project, and increased the offer to include an additional $1,000.00 per week. In total, the Plaintiff would make $30.00 per hour, plus overtime, for a 58-hour work week with the additional $1,000.00 per week. As the Moore's were now expecting their fifth child, he accepted the job.

By late Summer of 2019, the Plaintiff had moved his family from Indiana to Massachusetts and was working full-time at the Brayton Point Project. The Plaintiff drove a haul-truck, operated heavy machinery, worked as a laborer with his hands, and occasionally supervised the work of younger, less experienced, laborers. All of the Plaintiff's work was directed by the Site Superintendent, Roger Oberkramer.

On Saturday, December 7, 2019, Oberkramer assigned the Plaintiff and one other employee to clear out an office in an abandoned trailer on-site at Brayton Point in order to create a clean room for workers to don and doth clothing. The trailer had to be completely emptied of its contents, which included boxes, filing cabinets, desks, refrigerators, and other office furniture. The task was completed by hand, and at times required the Plaintiff and the other worker to lift heavier items together. That evening at home, the Plaintiff began to experience significant hip pain.

The next day, Sunday, December 8, 2019, the Plaintiff's hip pain continued to worsen. By Monday morning, December 9, 2019, he could not walk normally and his pain and discomfort had increased. The Plaintiff called Oberkramer prior to the start of his shift at 7:30 a.m. and reported

the injury. The Plaintiff then went to the emergency room to have his injury evaluated. There, his treating physician administered tests, provided medication, ordered a follow-up visit, and discharged the Plaintiff with a note to return to work with restrictions. The restrictions stated that the Plaintiff was not to do any heavy lifting or stand for prolonged periods of time, but that he could operate machinery and drive a truck. On December 9, 2019, the Plaintiff provided the doctor's note and work restrictions to Becky Lydon, Chief Operating Officer of Industrial Demolition and affiliated companies. This accommodation was granted.

On Tuesday, December 10, 2019, the Plaintiff reported to work. He worked without incident until the afternoon of Friday, December 13, 2019. At that time, the Plaintiff was operating a piece of heavy machinery to pick up and clear metal scrap from the ground. Roger Oberkramer directed the Plaintiff and others working nearby to stop using machinery and to instead pick up and move the scrap by hand. The Plaintiff reminded Oberkramer about his injury, and his accommodation.

Having just been reminded of the Plaintiff's injury, Oberkramer stated, "I don't give a fuck what the office says, you need to get out and starting working and pick this up." For the next few hours, the Plaintiff did as he was told, to the best of his ability. At the end of the shift, the Plaintiff was riding in a cart back to a trailer in order to change his work boots. The cart had lights on.

Oberkramer then screamed over the radio to "turn the fucking lights off." As the Plaintiff walked toward the trailer to change, he was confronted by Oberkramer. Oberkramer was irate. He loudly accused the Plaintiff of "jerking off in machines all day" and "milking his injury." The confrontation continued to escalate, with the Plaintiff defending his work ethic and his current work restrictions and Oberkramer belittling him. Finally, Oberkramer terminated the Plaintiff, telling him, "I have no use for you anymore; call the office."

On December 17, 2019, the Plaintiff had a telephone conversation with Industrial Demolition's CEO, Michael Roberts. The Plaintiff then reported to Roberts that Oberkramer was dangerous, harassed other employees, used racial slurs such "spic" and "nigger", and terminated him despite his accommodation. Roberts acknowledged Oberkramer's behavior, stating that he was, "rough around the edges." Mr. Roberts further stated that Oberkramer informed him that Moore was not terminated but sent home for discussing wages with other employees, and that Moore should "figure it out" with Oberkramer. Despite what the Defendant will otherwise assert, he did not reinstate Moore. He did not investigate allegations against Oberkramer.

Having been ridiculed and terminated after uprooting his family and moving to Massachusetts, the Plaintiff suffered significant emotional and financial distress.

## LEGAL ANALYSIS

### A. The Plaintiff's termination was discriminatory and retaliatory and in violation of Massachussetts law.

The Plaintiff's hip injury temporarily impaired his ability to walk. Consequently, Lydon granted him a temporary accommodation limiting his work activities. Oberkramer not only did not honor these accommodations but he terminated Moore in retaliation for protected activity. He was therefore, by virtue of statute, a qualified handicapped individual under G.L. c. 151B.

The Plaintiff suffered financially and emotionally as a result of his illegal termination. His earning potential and financial plans were greatly impacted as he and his family sought to rebuild their lives in the U.S. following their mission work in Ecuador.

## CONCLUSION

For the reasons set forth above, the Plaintiff will show that Industrial Demolition is liable for The Plaintiff's claims of discrimination, retaliation, and failure to accommodate.

Respectfully submitted,
Eric Moore,
By his Attorney,

 */s/Jamie Goodwin*
Jamie Goodwin
BBO# 673207
Duddy Goodwin & Pollard
446 Main Street, 16th Floor
Worcester, MA 01608
jg@dgpfirm.com


## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2023, the foregoing was filed with the Clerk of Court using the CM/ECF electronic filing system, and that notice was provided to the parties of record.

*/s/Jamie Goodwin*
Jamie Goodwin